# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIMITRA SVIGOS,

      Plaintiff,

      v.

WHEATON SECURITIES, INC.
EMPLOYEE STOCK OWNERSHIP PLAN,
WHEATON SECURITIES, INC., PAUL
SVIGOS, individually and in his capacity
as Wheaton Securities, Inc. Employee Stock
Ownership Plan Fiduciary, and JOHN
SVIGOS, individually and in his capacity
as Wheaton Securities, Inc. Employee Stock
Ownership Plan Fiduciary,

      Defendants.

Case No. 17-cv-04777

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Dimitra Svigos brings this action for various violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, both individually and derivatively on behalf of the Wheaton Securities, Inc. Employee Stock Ownership Plan (the Plan). [32]. Plaintiff asserts the following claims: a claim against the Plan for benefits due under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count I); a claim against Wheaton Securities, John Svigos, and Paul Svigos for breach of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (Count II); and a claim against Wheaton Securities, John Svigos, and Paul Svigos for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (Count III). *Id.* Defendants collectively moved to dismiss all claims. [36]. For the reasons explained below, this Court denies Defendants' motion.

1

## I. Background[1]

Plaintiff Dimitra Svigos worked at Wheaton Securities, Inc. (Wheaton) and was a participant in the Plan. [32] ¶ 3. The Plan qualifies as a pension plan and an employee benefit plan under ERISA. *Id.* ¶ 4; 29 U.S.C. §§ 1002(3), (2)(A). The Plan owns Wheaton, a privately held Illinois corporation that buys and sells securities. [32] ¶ 5. As of January 1, 2012, Wheaton became the Plan Administrator. *Id.*; [32-1] at 2, 13; [32-2] at 70. Wheaton is also the Plan Sponsor: the employer adopting the Plan. [32-1] at 2. The Plan is governed by Wheaton's Adoption Agreement, the Basic Plan Document (the Plan Document), and the Plan Trust Agreement. [32] ¶ 9; [32-1]; [32-2]; [32-3].

Wheaton and the Plan were managed largely by two brothers: Paul and John Svigos.[2] [32] ¶¶ 6, 7, 11. Plaintiff is married to their brother Michael, from whom she filed for divorce in May 2012. *Id.* ¶ 3. Wheaton notified Plaintiff of her termination orally in May 2013, followed by a termination letter in December 2013. *Id.* ¶¶ 57, 72. In January 2014, Plaintiff decided to transfer her Plan account balance to her personal individual retirement account (IRA). Under the terms of the Plan, Plaintiff was entitled to her entire Plan account balance, which she alleges constituted one-third of the fair market value of the Plan's assets. *Id.* ¶ 73. In January 2015, the Plan paid Plaintiff $2,086,622.69, allegedly underpaying her by at least $1.8 million dollars. *Id.* ¶ 74. That payment led to this suit.

---

[1] This Court draws facts from the amended complaint, [32], and the exhibits attached to it, *see Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

[2] This Court refers to Paul and John by their first names for clarity, given that they and Plaintiff share a last name, which also appears in the names of certain corporate entities referred to below.

According to Plaintiff, beginning on or around December 2012—seven months after Plaintiff filed for divorce from Michael—Paul, John, and Wheaton engaged in a number of transactions and improper bookkeeping that devalued Wheaton's assets and therefore the Plan's assets, which included 100 percent of Wheaton's stock. *See id.* ¶¶ 12–13, 15, 37. Plaintiff alleges that this devaluation deprived her of the "fair market value" of her share of the Plan's assets. *Id.* ¶¶ 15, 74.

Throughout the relevant period—approximately 2012 through Plaintiff's payout in 2015—Paul and John were Plan trustees and fiduciaries, while simultaneously serving as agents of Wheaton. *Id.* ¶¶ 6, 7, 11. Paul was Wheaton's director and manager, directing the investment of Wheaton's assets; he also controlled the "management, administration, and disposition of the Plan's assets," including appraisals. *Id.* ¶ 6. John held similar authority over the Plan, and took over from Paul as Wheaton's president in 2011. *Id.* ¶ 7. Plaintiff alleges a variety of misconduct by Paul, John, and Wheaton.

First, Plaintiff alleges that Paul improperly recorded personal liability. *Id.* ¶¶ 28–32. Specifically, Plaintiff claims that Paul—a defendant in separate litigation because of his alleged involvement in a Ponzi scheme—improperly recorded a legal claim against him of nearly $5 million as Wheaton's "corporate liability," even though any such liability was personal to him. *Id.*; *see also* [32-5] at 7. Plaintiff alleges that John approved, allowed, or accepted these actions, which benefited Paul to the detriment of the Plan and Plan participants, including Plaintiff. [32] ¶ 34. In addition to including Paul's personal liability on Wheaton's

books—which appears at a minimum in Wheaton's recorded liabilities for 2013—Plaintiff alleges that Paul double counted some of that liability with John's approval or acceptance. *Id.* ¶¶ 46–49.

Next, Plaintiff alleges that beginning in or around December 2012, Paul and John arranged for Wheaton to pay over $1.5 million in sham fees to Svigos Asset Management (SAM), an entity that Paul owned and controlled. *Id.* ¶¶ 15, 37–43. These fees primarily included investment and management fees backdated to the Plan's inception in 2000, though neither Paul nor SAM had previously charged such a fee. *Id.* ¶¶ 35–38. In January 2013, Paul and John signed a fee agreement with SAM on behalf of Wheaton for future investment management representing two percent of assets and ten percent of profits, plus other fees. *Id.* ¶¶ 39–40. Plaintiff alleges that these sham fees reduced Wheaton's assets, and therefore the Plan's assets, by at least $1.65 million, to the corresponding benefit of Paul. *Id.* ¶¶ 41–42.

Additionally, Plaintiff alleges that under Paul and John's direction, the Plan loaned $300,000 to "a personal friend and business associate" of Paul and John without properly recording the loan or collecting any interest on it, to the detriment of the Plan and its participants. *Id.* ¶ 50.

Finally, Plaintiff alleges that in 2013 and 2014 Paul and John failed to properly select an appraiser for the Plan's assets, including by failing to "(i) investigate the qualifications of the individual selected to appraise the Plan's assets; (ii) investigate the individual's methodology for conducting appraisals; and (iii) select a qualified individual to appraise the Plan's assets." *Id.* ¶ 52. Paul and John

retained—or approved the retention of—David Bradbury, who appraised the Plan's assets for fiscal years 2012 and 2013 based upon Wheaton financial records provided by Paul, John, or Wheaton. *Id*. ¶¶ 53, 58. According to Plaintiff, Bradbury was not a certified public accountant, was not trained to value employee stock ownership plans (ESOPs), and had no other license, degree, or certification qualifying him to value corporations like Wheaton. *Id*. ¶ 54. He conducted his valuations simply by inputting numbers from Wheaton's tax records into the software program "Biz Pricer," and conducted no additional due diligence or independent investigation into Wheaton's financial data and assets. *Id*. ¶¶ 65–68.

Thus, according to Plaintiff, Paul and John provided documents to Bradbury that reflected improper liabilities and transactions to support his valuation. *Id*. ¶¶ 15, 55, 58, 65. They, or Wheaton, secured his services despite his lack of valuation qualifications and never inquired into his valuation methodology. *Id*. ¶¶ 52, 54, 55, 68, 71. They therefore approved Bradbury's appraisals when they knew or should have known that the valuation "materially and improperly substantially undervalued the Plan's assets." *Id*. ¶ 98. Plaintiff's pay-out of her share of the Plan assets in 2015 was based upon this allegedly faulty valuation, depriving her of the real value due to her under the Plan. *Id*. ¶ 74.

Following this deficient pay-out, in the course of her divorce proceedings, Plaintiff obtained information relating to the foregoing events. *Id*. ¶ 75. She sought additional information about the Plan and its assets and in March 2016 filed a claim for additional benefits under the procedures set forth in the Plan. *Id*. ¶¶ 75–

77.  Paul, on behalf of Wheaton (the Plan Administrator), denied Plaintiff's claim in June 2016 and denied her appeal that November. *Id.* ¶¶ 78, 83.  Having exhausted her administrative remedies, Plaintiff brought this suit in June 2017.  [1].  She filed her amended complaint in August 2017, [32], and Defendants moved to dismiss for failure to state a claim upon which relief may be granted, [36].

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  A motion to dismiss does not reach questions of fact. *See Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729–30 (7th Cir. 1999).

To survive a motion to dismiss, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In evaluating a complaint, this Court draws all reasonable inferences in the plaintiff's favor and accepts all well-

pleaded allegations as true. *Id.* This Court does not, however, automatically accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. Analysis

Defendants seek to dismiss Counts I and II on the grounds that the conduct alleged does not state a cognizable ERISA claim, and Count III because ERISA does not authorize equitable relief where adequate relief is available under ERISA's other provisions. [36]. Defendants also seek to dismiss all claims against John as insufficiently pled. [36] at 12. This Court addresses the viability of each of Plaintiff's claims before turning to the allegations against John.

### A. Count I: Claim for Benefits

Count I of Plaintiff's amended complaint is a claim to recover benefits under ERISA § 502(a)(1)(B). [32] ¶¶ 85–92. Plaintiff alleges that the terms of the Plan entitle her to a one-third share of the "fair market value of the Plan's assets as of December 31, 2013." *Id.* ¶ 88. She claims that she was denied the actual value of her share because of a faulty valuation of the Plan assets. *Id.* ¶ 89. Further, she alleges that Paul and John approved that valuation and denied her claim for full benefits while acting under a conflict of interest. *Id.* ¶ 90. Plaintiff argues in her brief that her claim is also based upon Defendants' alleged self-dealing, [50] at 8, though she did not fully articulate this contention in her amended complaint.

#### 1. Faulty Valuation

Defendants contend that a claim for benefits under ERISA § 502(a)(1)(B) cannot be based upon the mere fact of a faulty valuation, but must be tied to a

violation of specific terms of the Plan. [37] at 2. Plaintiff responds that Defendants' failure to secure a qualified "independent appraiser" violates the Plan's terms. [50] at 7. Although Plaintiff did not specifically allege this violation of the Plan in her amended complaint, Plaintiff attached the Plan Document and copies of the appraisal records as exhibits to her complaint, and argues that those attachments suffice to preserve her claim against a motion to dismiss. *Id.*

Defendants are correct that a claim for benefits must be tied to a violation of Plan terms. ERISA § 502(a)(1)(B) authorizes civil actions to recover benefits due "under the terms" of the plan at issue. 29 U.S.C. § 1132(a)(1)(B). Thus, a plaintiff bringing a claim under that provision "is essentially asserting his or her contractual rights under an employee benefit plan," and such claims "are creatures of contract law." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992); *see also Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013) (ERISA § 502(a)(1)(B) provides "a contract remedy under the terms of the plan."). Accordingly, a free-standing allegation that Defendants authorized an improper valuation cannot, on its own, sustain Plaintiff's claim.

Plaintiff argues that she sufficiently alleged a violation of the Plan's terms by attaching the Plan Document to her amended complaint, despite failing to specify a violation in the complaint itself. [50] at 8. The Document sets out the Plan's governing rules, including various requirements for valuations. *See* [32-2] at 58. Defendants argue that this belated clarification cannot save her claim from a motion to dismiss. [60] at 2. Defendants are incorrect. Documents attached to a

complaint "become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Thus, this Court considers such documents along with the complaint to determine whether Plaintiff has provided sufficient "direct or inferential allegations to establish the necessary elements for recovery under the relevant legal theory." *Glatt v. Chi. Park Dist.*, 847 F. Supp. 101, 103 (N.D. Ill. 1994) (citing *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979)).

Plaintiff argues that Defendants failed to comply with section 9.10 of the Plan Document in securing the valuation used to determine her benefits. [50] at 7. Section 9.10 requires all valuations to be performed by an "independent appraiser," which it defines as "any appraiser meeting the requirements of Code section 401(a)(28)," referring to the Internal Revenue Code (IRC). [32-2] at 6, 58. IRC section 401(a)(28)(C) cross-references additional regulations, *see* 26 U.S.C. § 401(a)(28)(C), which require a signed declaration from the appraiser describing his qualifications and attesting to various conditions, *see* 26 C.F.R. 1.170A-13(c)(5)(i)(B). Plaintiff's amended complaint alleges, among other deficiencies, that Defendants selected an unqualified appraiser (Bradbury) to conduct the valuation. [32] ¶¶ 52–54. The amended complaint also includes exhibits containing the

valuations that Bradbury provided in 2013 and 2014, which lack the signed declaration required by the IRC and accompanying regulations. *See* [32-11, 32-12].

Drawing all reasonable inferences in Plaintiff's favor, *Iqbal*, 556 U.S. at 678, these documents sufficiently state a claim for relief under ERISA § 502(a)(1)(B). Plaintiff seeks to recover benefits that she alleges would be due to her if the terms of the Plan—namely, the requirement that Defendants secure a qualified, independent appraiser—had not been violated. She thus sufficiently alleges a claim for benefits due to her "under the terms" of the Plan. *See* 29 U.S.C. § 1132(a)(1)(B).

### 2. Self-Dealing

Plaintiff also contends in her brief that the self-dealing transactions that Defendants allegedly undertook provide an alternate basis for her § 502(a)(1)(B) claim, in that these transactions violated section 7.01(e) of the Plan Document. [50] at 8. Section 7.01(e) merely entitles a Plan participant to her "vested Account" on a certain date following termination. [32-2] at 34. The Document defines "Account" as "the balance of a Participant's interest in the Trust Fund as of the applicable date." [32-2] at 6. Plaintiff does not point to any further definition of her "vested Account," or of her interest in the trust fund.

Plaintiff's amended complaint does not provide sufficient information for these transactions to provide the basis of a benefits claim under § 502(a)(1)(B). Plaintiff does not allege sufficient facts to support the inference that these transactions violated a term of the Plan and thereby resulted in an improper denial of benefits due under the Plan. Plaintiff does not explain how the self-dealing transactions violated her entitlement to her vested account. These transactions

may have wrongfully reduced Plaintiff's interest in the trust fund, but if so, that would violate Defendants' fiduciary duty rather than any specific provision of the Plan. The plain text of section 7.01(e) does not clarify the situation. Defendants appear to have complied with 7.01(e) insofar as they provided her the balance of her account as they assessed it upon her termination. [32] ¶¶ 73, 74. Plaintiff's quarrel with Defendants is with their valuation and prior disputed transactions, not with any failure to turn over her shares. *See id.* ¶¶ 73, 74, 89, 90.

Thus, with respect to Defendants' alleged self-dealing, Plaintiff has not connected these transactions with a violation of Plan terms, and they therefore cannot provide the basis of her § 502(a)(1)(B) claim. *See* 29 U.S.C. § 1132(a)(1)(B); *Tolle*, 977 F.2d at 1133. But to the extent that her claim relies on the improper valuation previously discussed, Count I survives Defendants' motion to dismiss.

### 3.    Conflict of Interest

Plaintiff argues in her brief that her allegations of Paul and John's conflict of interest in administering the Plan offer a third possible basis for her benefits claim. [50] at 8–9; [32] ¶ 90. The cases she cites, however, involve the standard of a federal court's review of a plan administrator's decision—they do not articulate a basis for a § 502(a)(1)(B) claim. *See Metro. Life v. Glenn*, 554 U.S. 105, 115–17 (2008) (discussing how and whether to weigh conflicts as a "factor in determining whether there is an abuse of discretion"); *Marrs v. Motorola, Inc.*, 577 F.3d 783, 785–86 (7th Cir. 2009) (discussing review of the administrator's discretionary decisions). Such factors would become relevant if and when this Court reaches the merits of Plaintiff's claim, but they have no bearing here. *See Int'l Mktg.*, 192 F.3d

at 729 (a motion to dismiss only tests the sufficiency of a plaintiff's pleadings). Thus, the alleged conflict of interest theory does not provide an independent basis for Plaintiff's claim, but Count I nevertheless survives dismissal based upon the alleged improper valuation.

### B. Count II: Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under ERISA, plaintiffs must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). ERISA imposes "duties of loyalty and prudence on a plan fiduciary," which require the fiduciary to act "'for the exclusive purpose' of providing benefits to participants," using "'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use.'" *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting 29 U.S.C. § 1104(a)(1)(A)–(B)). This requires the fiduciary to choose "wise investments" and eschew "imprudent ones." *Id.* Courts assess the prudence of the fiduciary's conduct "in terms of both procedural regularity and substantive reasonableness." *Id.*

Plaintiff's claim for breach of fiduciary duty rests upon Bradbury's improper valuation, John and Paul's self-dealing transactions, and John and Paul's conflicts of interest. [32] ¶¶ 93–101. Defendants argue that Plaintiff does not allege a flawed valuation in the manner required for a breach of fiduciary duty claim, and that John and Paul completed the challenged transactions in their corporate capacity and therefore acted outside the scope of their fiduciary duties. [37] at 4, 8.

Defendants' challenge thus focuses upon the second prong of Plaintiff's claim: whether their alleged conduct actually breached a fiduciary duty.

### 1. Faulty Valuation

Defendants, relying on *Allen*, contend that a breach of fiduciary duty claim premised on a flawed valuation must attack the process used in obtaining the valuation, and that Plaintiff's allegations regarding the valuation's process are insufficiently pled. *See* [37] at 9 (citing *Allen*, 835 F.3d at 678). Defendants misread *Allen* and neglect the basic elements of a breach of fiduciary duty claim.

At this stage of litigation, Plaintiff need only plausibly allege a breach of the fiduciary duties of loyalty and prudence laid out in § 1104(a)(1)(A)–(B). *See Allen*, 835 F.3d at 678; *see also Iqbal*, 556 U.S. at 678. She may do this by attacking a valuation of the Plan's assets or any other insufficiently prudent or loyal actions taken in the management of the plan. *See Allen*, 835 F.3d at 674, 678–79 (sustaining claim where plaintiffs alleged that a fiduciary managing a plan's purchase of stock had a conflict of interest and did not sufficiently investigate the stock's value). The question is whether the fiduciary conformed to the standard set forth in § 1104(a): "Whether an ERISA fiduciary has acted prudently requires consideration of both the substantive reasonableness of the fiduciary's actions and the procedures by which the fiduciary made its decision." *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014); *see also Allen*, 835 F.3d at 678.

Here, Plaintiff alleges that Defendants erred substantively by approving Bradbury's appraisals when they knew or should have known that the valuation "materially and improperly substantially undervalued the Plan's assets," and erred

procedurally by failing to investigate Bradbury's qualifications or methodology. [32] ¶ 98. This is sufficient to survive a motion to dismiss. Plaintiff need not "describe in detail the process" used by Defendants, but must "allege facts from which a factfinder could infer that the process was inadequate." *Allen*, 835 F.3d at 678. Failing to adequately investigate the valuation would constitute inadequate process, *see id.* at 678–79, and providing misinformation to the appraiser, as Plaintiff also alleges, [32] ¶ 15, could be substantively unreasonable, *see Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000) (discussing types of misrepresentations that breach the ERISA fiduciary duty). In this early stage of litigation, Plaintiff "does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678. The facts do so here, and Plaintiff's breach of fiduciary duty claim may proceed on this basis.

### 2. Corporate Acts

Defendants' central argument against Count II is that the alleged self-dealing transactions detailed in Plaintiff's amended complaint were corporate acts beyond the scope of Defendants' fiduciary duties. [37] at 7–8. Although not all corporate acts entail fiduciary duties, this Court finds that the acts Plaintiff alleges here are not so clearly beyond the scope of Defendants' duties as to doom Plaintiff's claim at this time.

Under ERISA, "a person is a fiduciary with respect to a plan," and thus subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan "or disposition of its assets," or has "any discretionary authority or discretionary

responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). The Supreme Court has construed this provision to mean that employers or administrators are only subject to ERISA fiduciary duties if they acted "as a fiduciary" when "taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

The Court made this distinction in recognition of the fact that ERISA permits fiduciaries to hold multiple roles and even to possess "financial interests adverse to beneficiaries." *Id*. at 225. So, plan administrators who also serve as employers or plan sponsors may take actions in those capacities without incurring ERISA fiduciary obligations. *See Varity*, 516 U.S. at 498. Thus, even a designated fiduciary "does not always wear the fiduciary hat," and the viability of a "fiduciary-duty claim turns on whether" a defendant acted "as a fiduciary" when taking the challenged actions. *Brooks v. Pactiv Corp.*, 729 F.3d 758, 766 (7th Cir. 2013) (internal quotation marks omitted).

Determining which corporate activities implicate fiduciary duties is a nuanced task. A plan administrator does not act as a fiduciary when it adopts, amends, or terminates a benefits plan, *Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91 (1996), or when it terminates an employee, *Brooks*, 729 F.3d at 766. "Conveying information about the likely future of plan benefits," however, *does* incur fiduciary duties, because it relates to a plan administrator's obligation to inform participants about the plan. *Varity*, 516 U.S. at 502. The Seventh Circuit has also found that company directors who can appoint and delegate authority to the committee that

invests plan assets incur fiduciary duties with respect to the plan's funding. *See Baker v. Kingsley*, 387 F.3d 649, 663–64 (7th Cir. 2004); *see also Leigh v. Engle*, 727 F.2d 113, 133–35 (7th Cir. 1984) (holding that a close relationship with, and "*de facto* control over," plan administrators implicated fiduciary duties). In general, fiduciary acts include "the management and administration of the plan, the management and disposition of plan assets, the dispensation of investment advice," and benefits determinations. *Brooks*, 729 F.3d at 766.

Here, Plaintiff alleges that, while acting as agents of Wheaton (the Plan Sponsor and Administrator) and/or as Plan trustees, Paul and John wrongfully devalued or depleted the Plan's assets to Paul's personal benefit. [32] ¶¶ 15, 37. Specifically, Plaintiff alleges that Paul and John—whom Plaintiff alleges to be Plan fiduciaries, agents of the Plan Administrator, and Plan trustees—wrongfully entered Paul's personal legal liability as Wheaton corporate liability; entered that improperly attributed liability a second time, duplicating the wrongfully assumed liability; and entered a "sham" fee agreement to wrongfully pay Paul $1.5 million of Wheaton assets. *Id.* ¶¶ 6, 7, 26, 32–34, 37–39, 45–46, 97–100; [32-2]. Plaintiff further alleges that the Plan's assets "included 100% of Wheaton's stock," and thus a wrongful depletion of Wheaton's assets and stock value directly diminished the Plan's assets. *Id.* ¶¶ 12–13, 101.

Whether all of Wheaton's assets constitute the Plan's assets under the "Look Through Rule," 29 C.F.R. § 2510.3-101(a)(2), involves factual questions as to whether Wheaton qualifies as an "operating company" under the rule. An

"operating company" is one "primarily engaged" in "the production or sale of a product or service other than the investment of capital." 29 C.F.R. § 2510.3-101(c). What Wheaton's business "primarily" consists of is a factual determination inappropriate for resolution on a motion to dismiss. *See Int'l Mktg.*, 192 F.3d at 730. For now, this Court accepts Plaintiff's allegations as true, *Iqbal*, 556 U.S. at 678, and Plaintiff sufficiently alleges that Wheaton's assets are the Plan's assets.

Even without reaching that issue, this Court also finds that Plaintiff alleges a sufficiently close relationship between the Defendants, their responsibilities with respect to the Plan, their positions at Wheaton, the management of the Plan, and the management of Plan assets to support the inference that Defendants acted as plan fiduciaries when they allegedly engaged in self-dealing transactions. Such self-dealing violates the ERISA fiduciary duty, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143 n.10 (1985) (citing 29 U.S.C. § 1106), and Plaintiff thus states a claim for breach of that duty.

Few cases address the scope of a corporate officer's fiduciary duty when a Plan's assets include all corporate assets, and no case squarely addresses the situation where the positions of Plan Sponsor, Plan Administrator, Plan trustee, and corporate director were as commingled as Plaintiff alleges here. Various cases, however, affirm the rule that persons who exercise de facto or effective control over a Plan's trustees, assets, or investments have fiduciary responsibilities, even when they are not formally designated fiduciaries. *See Leigh*, 727 F.2d at 133–34 (corporate officers were fiduciaries "to the extent" they exercised "control or

authority over the plan," at which point they assumed ordinary fiduciary obligations); *Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992) (accounts were fiduciaries where they "recommended transactions, structured deals, and provided investment advice to such an extent that they exercised effective control over the ESOP's assets"); *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1460 (5th Cir. 1986) (parties were fiduciaries if they held such control over the plan's trustees such that the trustees "relinquish(ed) their independent discretion").

ERISA obligates such parties to fulfill their fiduciary duties when taking actions that implicate the control they exercise or that otherwise fulfill well-established fiduciary obligations. *See Leigh*, 727 F.2d at 133–34 (a fiduciary's responsibilities mirror a "person's actual authority" and extend as far as their power with respect to the fiduciary role); *Keach v. U.S. Trust Co., N.A.*, 234 F. Supp. 2d 872, 882–83 (C.D. Ill. 2002), *aff'd* 419 F.3d 626 (7th Cir. 2005) (finding that the defendants were de facto fiduciaries whose ERISA fiduciary liability extended to ordinary obligations of fiduciaries); *Martin*, 965 F.2d at 669 (de facto fiduciaries who effectively controlled plan assets acted as fiduciaries with respect to certain transactions involving those assets). This rule reflects a practical approach under which a person must meet the responsibilities of an ERISA fiduciary when he or she effectively controls some aspect of plan management and take actions exercising that power. *See Leigh*, 727 F.2d at 133–34; *see also Baker*, 387 F.3d at 663–64.

Here, Plaintiff alleges facts indicating that Defendants held almost unlimited power over the Plan. Wheaton was the Plan Sponsor and Plan Administrator. [32-1] at 2, 13; [32-2] at 70. John and Paul were Wheaton's agents, and at various times Wheaton's director, manager, or president. [32] ¶¶ 6, 7. John and Paul were also Plan trustees and fiduciaries. *Id*. Plaintiff's allegations also make clear the extent of the actual control exercised by John, Paul, and Wheaton over the Plan's assets, and over Wheaton's assets (which, as discussed, this Court assumes to be the Plan's assets). To the extent that, in their roles as either plan trustees or directors of the Plan Administrator, they controlled both the Plan and its assets, they were its fiduciaries, and acted as fiduciaries when exercising that control. *See Leigh*, 727 F.2d at 133–34; *Martin*, 965 F.2d at 669. If, in the exercise of that control, they subjected Plan assets to self-dealing transactions, as Plaintiff alleges, they violated their ERISA fiduciary duties. *See Keach*, 234 F. Supp. 2d at 882–83; *see also* 29 U.S.C. § 1106.

To the extent that the overlap between Wheaton's assets and the Plan's assets potentially throws any kind of wrench into this analysis, this Court follows the Ninth Circuit's persuasive logic in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009). Addressing a situation where, as here, "plan assets include the employer's stock," the Ninth Circuit found that corporate officers' self-interested decisions to award excessive executive compensation was subject to ERISA fiduciary liability, even though, on their face, these were "business decisions not subject to ERISA." *Id*. at 1077. Because the alleged activity was transparently self-interested and

directly affected the value of plan assets, a contrary holding "would protect from ERISA liability obvious self-dealing, as Plaintiffs allege occurred here, to the detriment of the plan beneficiaries." *Id.* Thus, the court found that where "an ESOP fiduciary also serves as a corporate director or officer," ERISA imposes fiduciary duties "on business decisions from which that individual could directly profit." *Id.*

Here, Defendants' actions directly affected the Plan assets under their control. If, as alleged, Paul and John arranged to pay Paul sham fees out of Wheaton's assets, they diverted Plan assets to Paul, and engaged in self-dealing of the most obvious kind. Allowing Defendants to exempt such actions from ERISA liability by simply relabeling them as "corporate acts" would be contrary to the plain language and underlying purpose of Congress in enacting ERISA, which included a "desire to offer employees enhanced protection for their benefits." *Varity*, 516 U.S. at 497; 29 U.S.C. § 1104(a); *Allen*, 835 F.3d at 677 ("ERISA is a 'remedial statute to be liberally construed in favor of employee benefit fund participants.'") (quoting *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983)). This conclusion also accords with Seventh Circuit precedent affirming a "broad reading" in defining a fiduciary, *Baker*, 387 F.3d at 664 (quoting *Mut. Life Ins. Co. of N.Y. v. Yampol*, 840 F.2d 421, 425 (7th Cir. 1988)), and a practical approach in assessing fiduciary responsibilities, *see id.*; *Leigh*, 727 F.2d at 133–34. Under these precedents, Plaintiff sufficiently alleges Defendants' control over Plan management and assets

and a breach of their fiduciary duty when exercising that control. Defendants'
motion to dismiss is denied as to Count II.

## C. Count III: Equitable Relief

Defendants seek to dismiss Count III of Plaintiff's amended complaint on the
grounds that equitable relief under ERISA § 502(a)(3) is unavailable where
plaintiffs may obtain appropriate relief under other ERISA provisions. [36] at 12.
Plaintiff argues that she may seek equitable relief in the alternative. [50] at 14.

Claims for equitable relief under § 502(a)(3) are appropriate only where
"adequate relief" is not available under another ERISA provision. *Varity*, 516 U.S.
at 515. In other words, "if relief is available to a plan participant under subsection
(a)(1)(B), then that relief is *un*available under subsection (a)(3)." *Mondry v. Am.
Fam. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009). Thus, whether Plaintiff's §
502(a)(3) claim is pled in the alternative is irrelevant; what matters is: (1) whether
Plaintiff has an adequate remedy under her other claims; and (2) whether the relief
sought under those claims is identical to the relief sought under § 502(a)(3). *See
Roque v. Roofers' Unions Welfare Trust Fund*, No. 12-c-3788, 2013 WL 2242455, at
*7–8 (N.D. Ill. May 21, 2013) ("Indeed, the door remains open for an ERISA plaintiff
to bring a claim under both sections if the claims are truly distinct."); *see also
CIGNA Corp. v. Amara*, 563 U.S. 421, 439–42 (2011) (analyzing the plaintiff's claim,
relief sought, and relief available under other ERISA provisions to determine
whether remedy was appropriate under § 502(a)(3)).

Often, when a plaintiff brings both a benefits claim under § 502(a)(1)(B) and
a claim for equitable relief under § 502(a)(3), the latter merely restates the former,

and no relief is necessary beyond awarding benefits available under § 502(a)(1). In such circumstances, § 502(a)(3) claims are not "distinct, equitable" claims, and should be dismissed. *See, e.g.*, *Halley v. Aetna Life Ins. Co.*, No. 13-c-6436, 2014 WL 4463239, at *2 (N.D. Ill. Sept. 10, 2014) (dismissing a § 502(a)(3) claim because it merely restated plaintiff's claim for a denial of insurance benefits and required no relief not already available under § 502(a)(1)(B)).

Here, however, two circumstances allow Plaintiff's § 502(a)(3) claim to proceed. First, although Plaintiff successfully states a claim for relief under § 502(a)(1)(B), that claim is not based upon a simple denial of a sum certain in benefits. Rather, it rests upon an allegedly faulty valuation, which means that any additional sum owed to Plaintiff has yet to be ascertained. *See* [32] ¶ 108. Thus, part of Plaintiff's requested relief is that this Court appoint an independent appraiser to conduct a new valuation. *Id*. This type of injunctive relief, tailored to the alleged wrongful conduct specific to this case, is classically equitable. *See CIGNA Corp.*, 563 U.S. at 440–42 (reformation of plan and injunctive relief was equitable in nature and available under § 502(a)(3)). Indeed, such relief appears to be unavailable under § 502(a)(1)(B), making relief under § 502(a)(3) appropriate. *See id*. at 438. Apart from this, however, Plaintiff also states a claim for Defendants' breach of fiduciary duty, which provides grounds for awarding equitable relief. *See Kenseth v. Dean Health Plan*, 772 F.3d 869, 882 (7th Cir. 2013) (holding that plaintiff could seek "make-whole money damages" as an equitable remedy under § 502(a)(3) if she could demonstrate a breach of fiduciary duty that

caused her damages).  Thus, Plaintiff has, at least at this stage, shown sufficiently distinct grounds to sustain her § 502(a)(3) claim.  *Cf. Roque*, 2013 WL 2242455, at *7.  This Court denies Defendants' motion to dismiss Count III.

### D.     John Svigos

Defendants contend that Plaintiff's allegations are insufficiently pled as to John.  Specifically, Defendants argue that Count I is a claim against the Plan, not against John personally, and Counts II and III fail to allege sufficient facts against John specifically to satisfy Rule 8 because the claims allege conduct by John "and/or" Paul.  [37] at 12, 13.

As to Count I, Plaintiff brings her benefits claim solely against the Plan.  [32] ¶ 86.  Nor does she argue otherwise in her brief.  [50] at 14–15.  Therefore Count I stands as currently pled, against the Plan.

As to Counts II and III, Plaintiff satisfies Rule 8 with respect to John.  On a motion to dismiss, plaintiffs need only provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient facts to permit a "reasonable inference" that the defendant is liable, *Iqbal*, 556 U.S. at 678.  The fact that Plaintiff alleges that certain actions may have been taken by either John or Paul is, at this stage, not fatal to her claim.  *See Johnson v. Vill. of Maywood*, No. 12-c-3014, 2012 WL 5862756, at *2 (N.D. Ill. Nov. 19, 2012) (allegations pled against defendants collectively satisfied Rule 8).  Plaintiff alleges John's participation in the management and control of the Plan and its assets, and his breach of his fiduciary duties through that participation.  *Id.* ¶¶ 7, 96–98, 100, 102.  She does so in

sufficient detail to satisfy the requirements of Rule 8, both generally and with respect to John specifically.

Finally, contrary to Defendants' assertion, [37] at 13, the exhibits attached to Plaintiff's complaint do not undercut her allegations against John. John's signature appears on the fee agreement between Wheaton and SAM that Plaintiff alleges constituted self-dealing. [32-9]. The fact that John is not named as a recipient of Bradbury's appraisals in their accompanying cover letters does not contradict Plaintiff's allegation that John—who was both a Plan fiduciary and Wheaton's president when the valuations were secured—"reviewed and approved" the 2013 appraisal. [32] ¶¶ 7, 90. These, and dozens of similar allegations, many of which are discussed above, describe both John's position of responsibility and breach of duties within that position sufficiently to state Plaintiff's claims. In short, Plaintiff alleges "sufficient factual matter" to permit the reasonable inference that John is liable for the misconduct she alleges. *Iqbal*, 556 U.S. at 678. This Court denies Defendants' motion to dismiss the claims against John.

## IV.    Conclusion

Defendants' motion to dismiss Plaintiff's amended complaint [36] is denied.

Dated:  January 29, 2018

Entered:

John Robert Blakey
United States District Judge